U.S. DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

FEB 03 2020

FILED

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:19-cr-221-JL |
| | ) | |
| JOSEPH EARL THOMAS AUBUT | ) | |

### PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, Scott W. Murray, United States Attorney for the District of New Hampshire, and the defendant, Joseph Aubut, and the defendant's attorney, Eric Wolpin, Esquire, enter into the following Plea Agreement:

1.  The Plea and the Offense.

The defendant agrees to waive his right to have this matter presented to a grand jury and plead guilty to an information charging him with conspiring to transmit damaging commands to computers used in interstate commerce, in violation of Title 18, United States Code, Section 1030(a)(5)(A), all in violation of Title 18, United States Code, Section 371.

In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in Section 6 of this agreement. The United States also agrees not to bring additional charges based on the defendant's participation in the conduct that forms the basis of the information in this case in the District of New Hampshire and/or the Southern District of Texas.

2.  The Statute and Elements of the Offense.

Title 18, United States Code, Section 371 provides, in pertinent part:

- 1 -

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more such persons do any act to effect the object of the conspiracy . . . [an offense has been committed.]

18 U.S.C. § 371.

Title 18, United States Code, Section 1030(a)(5)(A) provides, in pertinent part:

> Whoever . . . knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer; . . . shall be [guilty of an offense.]

18 U.S.C. § 1030(a)(5)(A).   The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

> First, that the agreement specified in the information, and not some other agreement or agreements, existed between defendant and another person to knowingly cause the transmission of a program, information, code or command; *that intentionally causes damage without authorization to a protected computer as defined at 18 USC § 1030(e)(2)(B)* Second, that the defendant willfully joined in that agreement; and

*(handwritten annotations: EW 2.3.20; JR 2.3.20; GW 2/3/20)*

> Third, that one of the conspirators committed an overt act during the period of the conspiracy in an effort to further the purpose of the conspiracy.

Pattern Criminal Jury Instruction for the District Courts of the First Circuit 4.18.371(1) (2015).

3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government would introduce evidence of the following facts, which would prove the elements of the offense beyond a reasonable doubt:

**In August 2016, defendant conspires with others to launch DDOS attacks against Victim Company A**

- 2 -

(a) From no later than summer 2016 to no earlier than summer 2017, defendant Joseph Aubut conspired with others such as Unindicted Co-Conspirator 1 to conduct distributed denial of service (DDOS) attacks against Victim Company A, a company whose affected computers were located within the Southern District of Texas and elsewhere. These DDOS attacks consisted of flooding victim company A's web servers with internet traffic in order to prevent users from accessing the services provided by those web servers.

(b) If only a few people participated, their DDOS attack could be more easily blocked. So defendant used his online moniker "Sergeant Anonymous" to recruit other members of "Anonymous," a hacking collective, to participate in these attacks. Sometimes he did this by creating videos and posting them on YouTube.com. He also posted messages on Twitter using his account "@SgtAnonymous1."

(c) For example, around August 17, 2016 and September 10, 2016, defendant, using his "Sergeant Anonymous" alias, created and posted videos on YouTube.com, calling for Anonymous to attack Victim Company A for its involvement with the Dakota Access Pipeline. During this time, Victim Company A learned of Anonymous's online threats against it and began to make preparations.

(d) On September 13, 2016, defendant, using his "Sergeant Anonymous" alias, created and posted a video on YouTube.com entitled "Calling All Anonymous!!!!!! #OpNoDAPL" (i.e. Operation No Dakota Access Pipeline). His video encouraged fellow Anonymous members to launch DDOS attacks

- 3 -

against Victim Company A and to publicly expose personal information of executives of Victim Company A ("doxing"). Defendant also said, "We need to show that Dakota access and victim company executives what Anonymous is made of ... All Anonymous activates, activates hackers, computer trolls, we need to show the true power of Anonymous in the world ... Ghost squad, we call upon you as well. Please DM [i.e. direct message] me via Twitter ...."

**In October, Defendant continues to rally support for online attacks against Victim Company A, a company that suffers DDOS attacks a few days later**

(e) Around October 22, 2016, defendant contacted another Twitter user to discuss a plan to DDOS the Sheriff's department that was dealing with people who were protesting the Dakota Access Pipeline.

(f) That same day, defendant, using alias "Sergeant Anonymous," created a video and posted it on YouTube.com entitled "Message to [the CEO of Victim Company A]." Defendant's video published the CEO's picture and home address – and threatened that Anonymous would conduct a "mass server attack" (i.e. DDOS) if the CEO did not respond in 2 days. Defendant stated, you have angered Anonymous for the last time. This time, we will not hold back. You have two days to respond to this message. If you do not respond, Anonymous will strike you directly. We already have an operation with your name on it. You have until Monday to respond. Should you fail, this operation will be engaged and you will be taken down in a mass server attack. People like you are nothing but a cancer on this planet and we are the cure. Remember, one and two days. Do not test us.   We

- 4 -

are Anonymous, we are legion. We do not forgive, we do not forget. [...]"

(g) A few days later, on October 27, 2016, website 1 of Victim Company A which posted facts about the Dakota Access Pipeline was subjected to a DDOS attack for approximately 6 minutes.

(h) Two hours later, website 2 of Victim Company A, which allowed employees to remotely access the company's systems, was also subjected to a DDOS attack for approximately 22 minutes.

**Defendant continues to marshal support for DDOS attacks that Victim Company A suffers on October 29 and November 3, 2016**

(i) Around October 29, 2016, defendant, as "Sergeant Anonymous," created and posted a YouTube video entitled, "OpNOdapl Reengaged!!!" where he announced that Anonymous would be doxing Victim Company A's employees and police (i.e. publishing their personal information). He also invited hackers to help.

(j) That same day, Victim Company A's main website (website 3) suffered a 44-minutes long DDOS attack from approximately 1,542 unique source IP addresses. This website contained information about the company, job postings for prospective employees, investor relations, etc.

(k) On Nov. 3, 2016, this same website (website 3) again suffered a 1 hour and 17 minutes DDOS attack from approximately 42,624 unique source IP addresses.

**Defendant continues to participate in the conspiracy by marshaling support as DDOS attacks continue**

(l) Around November 23, 2016, defendant, as "Sergeant Anonymous," continued to

- 5 -

participate in the conspiracy by creating and posting a YouTube video entitled, "Anonymous – message to the Morton county sheriff's department" wherein he announced that Anonymous had released personal information (i.e. doxed) of both a law enforcement officer and the governor of North Dakota.

(m) A week later, on December 1, 2016, Company A's website 4 and website 5 suffered three overlapping DDOS attacks that lasted 9 minutes (first overlap), 7 minutes (second overlap), and 15 minutes (third overlap), and came from approximately 65,512 different source IP address. At the time, these servers, which were based in Houston, Texas, acted as the company's primary internet DNS servers which connected visitors and employees who sought to visit the company's websites to the servers that hosted those websites.

(n) In December 2016 and January 2017, defendant and Co-conspirator 1 continued to participate in the conspiracy by posting videos related to the Dakota Access Pipeline as "Sergeant Anonymous."

Once Victim Company A learned in August 2016 that it would be the subject of attacks by Anonymous, it incurred costs of $299,812.56 to prepare for and weather these attacks. Victim Company A hired cyber security companies to assist with intrusion protection, as well as security enhancements to their IT infrastructure in response to these ongoing attacks from October to December 2016. Victim Company A also hired DDOS mitigation services, which ensured that its web services continued to be accessible, but Anonymous' DDOS attacks caused Victim Company A to incur $299,812.56 in costs. Thus, defendant's actions caused a loss of more than $5,000 aggregated over a one-year period starting in or around August 2016.

4. Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offense are:

A.    A maximum prison term of five years (18 U.S.C. § 371);

B.    A maximum fine of $250,000 (18 U.S.C. § 3571);

C.    A term of supervised release of not more than three years (18 U.S.C. §§
      3559(a) and 3583).The defendant understands that the defendant's failure
      to comply with any of the conditions of supervised release may result in
      revocation of supervised release, requiring the defendant to serve in prison
      all or part of the term of supervised release, with no credit for time already
      spent on supervised release; and

D.    A mandatory special assessment of $100 for each count of conviction, at or before
      the time of sentencing (18 U.S.C. § 3013(a)(2)(A)).

In addition to the other penalties provided by law, the Court may order him to pay

restitution to the victim(s) of the offense (18 U.S.C. § 3663 or § 3663A).

5. Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case

and that the Court is required to consider the United States Sentencing Guidelines as advisory

guidelines. The defendant further understands that he has no right to withdraw from this Plea

Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation

Office shall:

A.    Advise the Court of any additional, relevant facts that are presently known
      or may subsequently come to their attention;

B.    Respond to questions from the Court;

C.    Correct any inaccuracies in the pre-sentence report;

D.    Respond to any statements made by him or his counsel to a probation

officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6. Sentencing Stipulations and Agreements.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7. Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A. Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B. Challenges the United States' offer of proof at any time after the plea is entered;

- 8 -

C.   Denies involvement in the offense;

D.   Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.   Fails to give complete and accurate information about his financial status to the Probation Office;

F.   Obstructs or attempts to obstruct justice, prior to sentencing;

G.   Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.   Fails to appear in court as required;

I.   After signing this Plea Agreement, engages in additional criminal conduct; or

J.   Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

- 9 -

8. <u>Waiver of Trial Rights and Consequences of Plea</u>.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.  The defendant also understands that he has the right:

A. To plead not guilty or to maintain that plea if it has already been made;

B. To be tried by a jury and, at that trial, to the assistance of counsel;

C. To confront and cross-examine witnesses;

D. Not to be compelled to provide testimony that may incriminate him; and

E. To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of the his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9. <u>Acknowledgment of Guilt; Voluntariness of Plea</u>.

The defendant understands and acknowledges that he:

A. Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B. Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C. Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

- 10 -

D.    Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.    Is completely satisfied with the representation and advice received from his undersigned attorney.

10.   Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties (as well as the U.S. Attorney's Office for the Southern District of Texas) and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11.   Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible. The defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending his naturalization, which would likely subject him to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences

- 11 -

of this plea will be imposed in a separate proceeding before the immigration authorities. The

defendant wants and agrees to plead guilty to the charged offense regardless of any immigration

consequences of this plea, even if this plea will cause his removal from the United States. The

defendant understands that he is bound by his guilty plea regardless of any immigration

consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty

plea and to his sentence based on any immigration consequences, and agrees not to seek to

withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his

guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

 12. <u>Satisfaction of Federal Criminal Liability; Breach</u>.

 The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal

liability in the District of New Hampshire and Southern District of Texas arising from his

participation in the conduct that forms the basis of the information in this case. The defendant

understands that if, before sentencing, he violates any term or condition of this Plea Agreement,

engages in any criminal activity, or fails to appear for sentencing, the United States may consider

such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

 13. <u>Waivers</u>.

 A. Appeal.

 The defendant understands that he has the right to challenge his guilty plea and/or

sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and

voluntarily waives his right to challenge on direct appeal:

  1. His guilty plea and any other aspect of his conviction, including, but not
   limited to, adverse rulings on pretrial suppression motion(s) or any other
   adverse disposition of pretrial motions or issues, or claims challenging the
   constitutionality of the statute of conviction; and

2.    The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B.   Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.   By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1.    His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.    The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

- 13 -

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

14.  Restitution

This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

- 14 -

Defendant agrees to take all steps necessary to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

Defendant understands that restitution and fines are separate components of sentencing and are separate obligations.

Defendant agrees to pay full restitution to the victim(s). Defendant stipulates and agrees that as a result of his criminal conduct, the victim(s) incurred a monetary loss of at least $299,812.56. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s). Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

15.    No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

16.   Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this

- 15 -

Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

17.   <u>Agreement Provisions Not Severable</u>.

The United States and the defendant understand and agree that if any provision of this

Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and

void and no part of it may be enforced.

SCOTT W. MURRAY
United States Attorney

Date: __2|3|20__                          By: _____
                                          Georgiana Konesky
                                          Assistant United States Attorney
                                          Bar Association #685375
                                          53 Pleasant St., 4th Floor
                                          Concord, NH 03301
                                          Georgiana.Konesky@usdoj.gov

The defendant, Joseph Aubut, certifies that he has read this 17-page Plea Agreement and
that he fully understands and accepts its terms.

Date: __2|3|20__                          x _____
                                          Joseph Aubut, Defendant

I have read and explained this 17-page Plea Agreement to the defendant, and he has
advised me that he understands and accepts its terms.

Date: __2|3|20__                          _____
                                          Eric Wolpin, Esquire
                                          Attorney for Joseph Aubut

- 17 -